Exhibit 2

# TOWER RESEARCH CAPITAL LLC

Quantitative Trading and Investment Strategies

## EMPLOYMENT, CONFIDENTIALITY & NON-COMPETITION AGREEMENT

This agreement (the "Agreement") is made as of the date below between you, Alaap Parikh, and Tower Research Capital LLC ("Tower"). You understand that for the purposes of this Agreement, the term "Tower" means Tower Research Capital LLC or its affiliates. By signing this document you agree as follows:

1. **Acknowledgments.** You understand and agree that:

    i. Tower is engaged in a highly competitive business and the preservation and protection of Tower's intellectual property, confidential and proprietary information, and unique skills (Confidential Information as defined below in section 7) are of utmost importance to the legitimate business interests of Tower.

    ii. Disclosure of Tower's Confidential Information could have negative business consequences for Tower since it gains its competitive advantage through the use of its Confidential Information.

    iii. The restrictive covenants contained in this Agreement are necessary because of the nature of Tower's business, which thrives through the use of Confidential Information.

2. **Employment "At Will."** Employment at Tower is "at will." This means that either you or Tower may terminate the employment relationship at any time, for any reason or for no reason, subject to the notice requirements set forth in section 5 below. Similarly, Tower may terminate your employment at any time, with or without notice, for any reason or for no reason, with or without Cause (as defined below in section 6).

3. **Services, Rules & Regulations.** You will devote your full time, attention, energy, and best efforts to perform your employment duties in order to advance the business and interests of Tower. You agree to act in an honest and ethical manner and comply with all statutes, laws, and regulations concerning the work performed by you, as well as any Tower policies and procedures, including but not limited to any Tower Employee Handbooks or Compliance Manuals.

4. **Obligations to Third Parties.** It is very important to Tower that you abide by and respect any and all agreements with and/or obligations to previous employer(s). Tower asks that you honor any applicable non-competition, non-solicitation, confidentiality, and/or intellectual property restrictions, as well as uphold any common-law obligation or duty and/or any relevant fiduciary duties that you may have to your past employer(s). You represent that you have and will continue to abide by any such agreements and/or obligations.

5. **Notice of Resignation.** Continuity at Tower is important to the functionality and efficiency of the business. In an attempt to ensure that your departure is not disruptive to Tower and to effectuate a smooth transition of your duties, you agree to provide at least sixty (60) days' written notice of your intention to terminate your employment with

Tower. Out of respect for your coworkers, you agree to meet with your manager to discuss your departure and transition of duties. During the Notice Period (as defined below): (i) you will continue to be an employee, and you will continue to be entitled to receive your base salary (but not a bonus, if you would otherwise be eligible for such a bonus) and (ii) your fiduciary duties and other obligations to Tower will continue. The 60-day period from the receipt of your resignation notice shall be the "Notice Period"; provided that Tower shall have the right, in its sole discretion and at any time during the Notice Period, to direct that you no longer come in to work or to shorten and/or terminate the Notice Period. The final calendar day of the applicable Notice Period shall be the "End Date."

6. **Cause.** For the purposes of this Agreement, "Cause" means:

   i. your conviction or a plea of nolo contendere to a felony that could reasonably result in damage to Tower;

   ii. your breach or violation of any provision of this agreement or any of Tower's policies and procedures applicable to you;

   iii. your engaging in conduct that constitutes a breach of fiduciary duty, fraud, or willful misconduct that is injurious to Tower, including to Tower's business, reputation, or goodwill;

   iv. your engaging in dishonest statements or misrepresentation with respect to Tower;

   v. theft, including but not limited to monetary theft, the theft of intellectual property, and the theft of any other property of Tower;

   vi. violation of any laws or stipulations as set forth by any regulatory agency or government body;

   vii. any willful or deliberate manipulation or deception of any kind, including but not limited to any misrepresentation of your past profit and loss statements;

   viii. failure to comply with all relevant laws, rules, and regulations to which Tower is subject, including but not limited to those rules and regulations imposed by the U.S. Securities and Exchange Commission, U.S. Commodity Futures Trading Commission, UK Financial Services Authority, Federal Energy Regulatory Commission, exchanges, electronic communication networks, alternative trading systems, and any other applicable regulatory or self-regulatory body in the U.S. and abroad; or

   ix. willful or deliberate failure to perform your duties or gross incompetence or negligence in the performance of your duties.

7. **Non-Disclosure.** During your employment with Tower, confidential information will be disclosed to you. Unauthorized disclosure of such information to third parties, including unauthorized disclosure to an internal department at Tower, or use of such information other than for Tower's express purposes could cause harm to Tower. Tower requests that you be respectful and mindful of "Confidential Information," which includes without limitation:

   i. business and financial information; business methods and practices; technological methods, practices, and information;

   ii. computer software or data of any sort and hardware architecture developed, compiled, or used by Tower;

   iii. the fact that Tower uses, has used, or has evaluated for potential use a particular computer program, hardware, or system, if the disclosure of such fact to a competitor of Tower might reasonably be expected to adversely affect the competitive position of Tower relative to that of such a competitor;

   iv. computational algorithms, procedures, methods, or techniques developed by Tower or the essential ideas and principles underlying such algorithms, procedures, methods, or techniques;

   v. trading strategies and/or order execution techniques developed, investigated, evaluated, or employed by Tower or any information that might reasonably be expected to lead to the development of such strategies, including but not limited to rate of return, variability of return, other statistical measures, trading volume, capital deployment, and transaction costs;

   vi. information related to any market inefficiencies or anomalies, statistical price relationships or patterns, or phenomena related to the execution of orders discovered, investigated, researched, or measured by Tower;

   vii. the results of any analysis conducted by Tower for its own internal use through either the execution of actual or simulated trading experiments or the execution of computational studies involving historical data, including but not limited to price and economic data;

   viii. information regarding the classes of financial instruments traded by Tower or studied by Tower as candidates for such trading;

   ix. information concerning or relating to investors in Tower and any investment fund managed by or affiliated with Tower, including but not limited to the investors' identities, the size of their investments, and any information sent to them by Tower or from them to Tower;

    x.    information concerning or relating to the investment returns of Tower or any investment fund managed by or affiliated with Tower; and

    xi.    such information as Tower may from time to time designate as being confidential.

Confidential Information will not include information that is in the public domain unless such information falls into the public domain by disclosure or other acts by you or through your fault.

Except as authorized by Tower, you will not either directly or indirectly utilize or divulge any Confidential Information. In addition, you agree that you will not copy, photograph, duplicate, draw, sketch, download, upload, alter, destroy, replicate, transmit, mail, or otherwise convey any Confidential Information belonging to Tower nor remove the same from Tower's office premises or property.

If you decide to leave Tower, you are permitted to use your skills, know-how, and knowledge, which you have developed both prior to and during your employment with Tower, along with market knowledge and other information that is publicly available, as long as you honor your obligations under this Agreement, including those outlined in section 8 below.

8.    **Non-Competition.** During your employment with Tower and during the Restricted Period (as defined below), you agree not to directly or indirectly engage in any Competitive Activity (as defined below).

    i.    "Restricted Period" means the 0, 3, 6, 9, or 12 month period following the End Date, as elected by Tower within fourteen (14) days following the End Date.

    ii.    "Competitive Activity" means: (a) directly or indirectly, whether paid or unpaid, performing for, rendering advice or consultancy to, becoming employed by, developing or researching trading strategies or ideas for, or otherwise assisting any Tower Competitor (as defined below); (b) directly or indirectly becoming a partner, manager, officer, director, or principal of a Tower Competitor; (c) directly or indirectly owning, acquiring, or obtaining an economic interest in a Tower Competitor; or (d) directly or indirectly acquiring a greater than 5% direct or passive equity, voting, revenue, income, profit, loss, or other economic interest in a Tower Competitor or in any entity affiliated with or managed by a Tower Competitor.

    iii.    "Tower Competitor" means any business, enterprise, individual, association, partnership, joint venture, or other legal entity or organization that (a) engages in the same or similar type of trading strategies or investment management of financial instruments as does Tower, such as securities, futures, commodities, derivatives, or other financial contracts or (b) directly or indirectly owns, controls, manages, or has a contractual relationship with any entity or individual that engages in the same or similar type of trading strategies or investment

4

> management of financial instruments as does Tower, such as securities, futures, commodities, derivatives, or other financial contracts.
>
> iv. "Restricted Period Payment." During the Restricted Period, Tower will, on a monthly basis, pay you an amount coincident to the base salary amount you would have received had you remained an employee of Tower, reduced by the amount of any salary, fees, or equivalent income that you may receive from any other source during the Restricted Period, provided that any passive investment or interest income shall not be included in any such deduction. You further agree to provide Tower with documentation of any such income during the Restricted Period. You acknowledge that during the Restricted Period, you will not be an employee of Tower and shall not be entitled to receive any compensation other than the Restricted Period Payment. For the avoidance of doubt, you will not be eligible to receive any bonus or any other benefit that may be paid or provided by Tower to employees during such period. Upon any breach or threatened breach of your obligations under this Agreement during the Restricted Period, Tower has the right to discontinue making Restricted Period Payments to you upon thirty (30) days' written notice. The parties may reduce the Restricted Period by *mutual written agreement* at any time. In no event shall any such discontinuance of Restricted Period Payments release you from this section 8 or from any other continuing or remaining obligations under this Agreement.

The decision to sign a non-compete restriction is a significant one. You realize that this section 8 may limit your ability to earn a livelihood in a business similar to Tower's, but you consider the benefits of joining Tower, including the training, education, and access to Tower's Confidential Information, sufficient to justify this limitation.

9. **Non-Solicitation of Employees.** You agree that you will not, either individually or through any company, either on your behalf or on behalf of any other person or entity competing or endeavoring to compete with Tower, without the prior written consent of Tower, either (i) at any time during your employment with Tower or (ii) for a period of one (1) year from the End Date (whether your employment is terminated by you or Tower and for any reason), directly or indirectly solicit for employment or endeavor to employ or to retain as an independent contractor or agent any person who is an employee of Tower as of the End Date or was an employee of Tower at any time during the one (1) year period prior to the End Date.

10. **Agreement to Reduce Restrictions, if Necessary.** If any of the restrictions in this Agreement are deemed by a court to be unenforceable but such restriction(s) could be made enforceable if part of the language were modified to reduce the period range, or scope of activities covered in the restriction(s), then this modified language will apply in the place of the original language. Any such modification will not affect the validity of any other restriction(s) contained in this Agreement.

11. **Media.** In this digital age, anything and everything you post online about Tower lives on forever through the Internet. Therefore, Tower asks that you be mindful and courteous in

making decisions about your use of online media out of respect for Tower and its employees.

To that end, you agree that you will not at any time during your employment with Tower directly or indirectly make any public comments regarding Tower by way of news interviews or the expression of personal views, opinions, or judgments to the media, including but not limited to print or broadcast press, online news sources such as blogs and media chat rooms, social networking sites and the like, or any other entity or person outside Tower, except with the prior written consent of Tower's Legal and Compliance Department. Communication with or through the media without such prior written consent in any manner that may be viewed as related to Tower is strictly prohibited.

You agree that at no time during or after your employment with Tower will you directly or indirectly disparage or defame Tower to any person or entity with whom Tower has or may have a business relationship.

This Agreement does not restrict your right and/or obligation to (i) discuss working conditions with current Tower employees, (ii) testify truthfully in any forum, and/or (iii) contact, cooperate with, or provide information to any government agency or commission.

12. **Injunctive Relief.** Tower is engaged in a highly competitive business and the protections contained in sections 7, 8, 9, and 11 (the "Covenants") of this Agreement are of vital importance to Tower. Tower expects that you will honorably uphold all of the Covenants because a violation of any of the Covenants would constitute immediate and irreparable injury to Tower. There may be no adequate remedy at law for such a breach and it will not be possible to measure damages for such injuries precisely. In the unlikely and unfortunate event of a breach or threatened breach of the Covenants, Tower may find it necessary to seek a temporary restraining order and/or a preliminary or permanent injunction, restraining you from engaging in activities prohibited by the Covenants or such other relief as may be required specifically to enforce any of the Covenants. The applicable Restricted Period shall be tolled during any period of violation of any of the Covenants and during any other period required for litigation during which Tower seeks to enforce such Covenants against you, if it is ultimately determined by a court that you were in breach of such Covenants.

13. **Notice to Future Employers.** For a period of one year from the End Date (the "Notification Period"), you agree to notify prospective employers of your ongoing obligations to Tower and to provide them with a copy of this Agreement. You further agree that if you accept an offer of employment during the Notification Period that you will inform Tower of the name of the employer and your start date, as well as all necessary and relevant information for a contact person, including his or her name, address, and telephone number.

14. **Intellectual Property.**

    i.   Definitions.

6

      a.   "Intellectual Property Rights" means any and all tangible and intangible: (i) rights associated with works of authorship, including copyrights, moral rights, neighboring rights, and derivative works thereof, (ii) trademark and trade name rights, (iii) trade secret rights, (iv) patents, design rights, and other industrial property rights, and (v) all other intellectual property rights (of every kind and nature however designated) whether arising by operation of law, treaty, contract, license, or otherwise, together with all registrations, initial applications, renewals, extensions, continuations, divisions, or reissues thereof.

      b.   "Tower Proprietary Material" includes but is not limited to any idea, invention, discovery, improvement, innovation, mark, design, computer program, business methodology, software or code and related documentation, technique, algorithm, trading model, mathematical model, or trading strategy that you create, develop, or deliver (whether or not any work in which copyright subsists or may subsist), at any time during your employment with Tower, whether during the course of your normal duties or other duties specifically assigned to you (whether or not during normal working hours), either alone or jointly with others, or with the use of Tower property, including any developments that are components of or integrated into any other Tower Proprietary Material.

  ii.   Ownership. All Intellectual Property Rights in the Tower Proprietary Material will be owned by Tower and will be transferred to and developed on Tower equipment. This Agreement serves as an assignment to Tower of all Intellectual Property Rights in the Tower Proprietary Material, and you agree to execute any documents and take any other steps to complete such assignment.

  iii.   Exclusions. Any Intellectual Property that is not Tower Proprietary Material shall be excluded from the restrictions set forth in section 14 of this Agreement. In order to be excluded, this Intellectual Property must be developed entirely on your own time without using Tower's offices; equipment; supplies; facilities; or confidential, proprietary, or trade secret information.

15. **Return of Property.** Upon termination of your employment with Tower, you agree to deliver promptly all Tower property and equipment in your possession, charge, control, or custody, including but not limited to physical and electronic documents, books, records, files, folders, memoranda, reports, notes, contracts, lists, computer equipment, computer disks and storage devices (and other computer-generated files and data) and copies thereof, identification cards, credit cards and receipts, mobile devices, keys and magnetic key cards, and the like.

16. **Outside Employment.** During the period of your employment, you will not without Tower's prior written approval directly or indirectly engage in any outside employment activity relating to any line of business in which Tower is engaged or which would otherwise conflict with or adversely affect in any way your performance of your duties for Tower.

17. **Survival.** The provisions and your obligations under this Agreement, including sections 7 through 15, and Tower's right to enforce such obligations shall survive the termination of your employment.

18. **Entire Agreement.** This Agreement constitutes the entire agreement between you and Tower with respect to your employment and supersedes any and all previous and contemporaneous agreements and representations, written or oral. This agreement may not be modified or amended, other than by an agreement in writing signed by the parties.

19. **Severability.** If any provision of this Agreement is determined to be invalid or unenforceable in whole or in part, such invalidity or unenforceability will attach only to such provision or part of this Agreement, and the remaining part of such provision and all other provisions of this Agreement shall continue in full force and effect.

20. **Governing Laws.** This Agreement will be governed by and construed in accordance with the laws of the State of New York without regard to the conflicts of laws principles thereof. You agree to submit irrevocably to the exclusive jurisdiction of the state and federal courts sitting in New York County, New York for the purpose of determining any and all rights or obligations under this Agreement.

21. **Independent Legal Advice.** Please make sure that you have fully read the terms of this Agreement and carefully considered its obligations. Although Tower has attempted to make this Agreement readable and comprehensible to non-lawyers, you may still want to contact a lawyer to review these materials with you. Tower will provide you with adequate time to do so.

22. **Conditions Precedent.** This Agreement is contingent upon (i) proof of your eligibility to work in the United States, (ii) compliance with Tower policies and procedures as indicated by your signed acknowledgment of both the Tower Employee Handbook and Compliance Manual, and (iii) successful completion of any background check or other tests which may be implemented from time to time.

**AGREED TO AND ACCEPTED BY:**

_[signature]_  
Alaap Parikh

12/10/15  
Dated

_[signature]_  
Mark Gorton  
Managing Director  
Tower Research Capital LLC

12/10/15  
Dated